UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

v.                                                                                                No. 24-cr-00115-PB-TSM

DAVID MENDUM

**SENTENCING MEMORANDUM**

Defendant David Mendum, by and through counsel, Jeffrey Levin, Assistant Federal Defender, files this Sentencing Memorandum respectfully requesting that the Court sentence him to 240 months in the Bureau of Prisons, with 5 years of supervised release to follow.

Mr. Mendum requests that the Court recommend to the Bureau of Prisons that he be designated to the appropriate facility at the Federal Correctional Complex in Butner, NC, which is within several hours' drive from Mr. Mendum's family (his mother and sister) in Camden, South Carolina.

Grounds follow.

**I.      Introduction**

On August 19, 2025, David Mendum pleaded guilty to Count 2 of the Indictment, charging him with Coercion and Enticement of a Minor, in violation of 18 U.S.C. §§ 2422(b) and 2427. The minimum term of imprisonment on Count 2 is 10 years and the maximum term is life. 18 U.S.C. § 2422(b). Pursuant to a Plea Agreement between the parties, Count 1 will be dismissed at sentencing. Sentencing is scheduled for December 10, 2025.

**II.     Plea Agreement**

The parties entered into a binding, Rule 11(c)(1)(C) Plea Agreement wherein they agree that a sentence in the range of 240 to 324 months' imprisonment is an appropriate disposition of this case. *Doc. 24*.

1

### III.     Advisory Guideline Calculation

Mr. Mendum has no prior criminal history, establishing a criminal history category of I.

Mr. Mendum objects to the advisory guideline range as the probation officer has calculated it. Specifically, Mr. Mendum objects to the 5-level Chapter Four Enhancement, at U.S.S.G. § 4B1.5(b)(1), on the basis that Mr. Mendum did not "engage[] in a pattern of activity involving prohibited sexual conduct" as defined by the guidelines. *Commentary to U.S.S.G. § 4B1.5, Application Note 4(a)*. Under that application note, "prohibited sexual conduct" means any of the following: (i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography; or (iii) trafficking in child pornography only if, prior to the commission of the instant offense of conviction, the defendant sustained a felony conviction for that trafficking in child pornography. It does not include receipt or possession of child pornography. *Id.*

Mr. Mendum has no prior sex offense conviction and no prior felony child pornography trafficking conviction, so (i) and (iii) are not applicable. The probation officer's contention that the number of messages, calls, and wire transfers correlates with multiple instances of sexual exploitation of minors is merely speculative. Mr. Mendum is not a repeat and dangerous sex offender against minors.

Without the § 4B1.5 enhancement the total offense level is 39. Based upon a total offense level of 39 and a criminal history category of I the advisory guideline imprisonment range should be 262-327 months.

### IV. Nature and Circumstances of Offense

Pursuant to a federal search warrant in an investigation from the District of Oregon, law enforcement identified a Skype account belonging to Mr. Mendum that was in communication with numerous individuals located in the Philippines who were livestreaming the sexual abuse of minors in exchange for payment.

A review of information within Mr. Mendum's Skype account revealed more than 170,000 messages exchanged between him and other user accounts from January 2017 through June 2022, most of which related to the sexual exploitation of minors. In addition to these messages, there were more than 900 video calls, several videos, and approximately 250 pictures exchanged between Mr. Mendum's account and other user accounts, including numerous selfie-style images depicting Mr. Mendum, most of which were related to the sexual exploitation of minors. Excerpts of messages between Mr. Mendum and the trafficker accounts are included in the Plea Agreement as well as in the Presentence Investigation Report.

As awful as Mr. Mendum's conduct was, he was not the organizer or creator of the livestream sessions. The children were subject to horrific abuse before and apart from Mr. Mendum's involvement, and, tragically, many likely continue to be abused today. UNICEF has estimated that 80% of Filipino children are vulnerable to online sexual abuse, calling the Philippines the "center of child sex abuse materials production in the world."[1]

### V. History and Characteristics of Defendant

The 47-year-old Mr. Mendum was born in New Hampshire and raised primarily in the town of Nottingham. His father, Robert Mendum, worked as a janitor, and his mother Sharon

---

[1] *See UNICEF, National Study on Online Sexual Abuse and Exploitation of Children in the Philippines* (Nov. 2023), available at https://www.unicef.org/philippines/reports/online-sexualabuse-and-exploitation-philippines (last accessed November 19, 2025).

(Latour) Mendum, worked at several companies, as well as the University of New Hampshire, to financially support the family. Mr. Mendum has two older siblings: his sister, Angela (Menduim) Poore lives with her husband in Camden, South Carolina, and his brother, Brian Mendum, resides in Rochester, New Hampshire.

Mr. Mendum had a good childhood and is close with his family members. He was not subjected to any abuse at home, but he reports that he was extensively bullied as a child in elementary school.

When Mr. Mendum was 17 years old, his family lost their home due to financial troubles. They moved to Ocean Springs, Mississippi, near Biloxi, Mississippi, to live with Mr. Mendum's great aunt and great uncle.

In his mid-20s, Mr. Mendum married his childhood sweetheart. He lived with her and her children from a previous marriage in Mississippi. But the couple lost their home in Hurricane Katrina. When his wife and stepchildren went to live with her father, Mr. Mendum was not permitted to join them. His parents had returned to New Hampshire and Mr. Mendum joined them, an initially temporary separation due to circumstance which became a permanent split when they divorced two years later, in 2007.

Mr. Mendum has had no other significant romantic relationships in his life. He is not married and has no children. He has lived primarily with his parents his entire life, in a mobile home they owned in Epping, New Hampshire (his father passed away in 2021 at age 73). His mother describes Mr. Mendum as having few friends, and as spending most of his time isolated from others.

Mr. Mendum earned his high school diploma and is OSHA 10 certified.[2] At time of arrested he was employed as a temporary employee through People Ready, doing day jobs, such as construction and snow shoveling, for several companies. From 2017 to 2023 he worked as a cook at McDonald's, in Lee and Raymond, New Hampshire. In younger years he worked at otrher fast food restaurants (Burger King, Wendy's, Taco Bell), as a janitor in a couple of casinos in Mississippi, and as a cashier in a gas station/convenience store (E Z Serve).

Healthwise, Mr. Mendum suffers from hypertension, flat feet, obesity and sleep apnea. He is currently being tested for diabetes, type 2, at the jail. Many of his teeth are decayed and need extraction. Both knees have deteriorated and will likely need replacement. He is allergic to cortisone. He has been diagnosed with attention deficit hyperactivity disorder (ADHD) but is not medicated. He does not smoke, drink, or use illegal drugs.

Mr. Mendum underwent a Psychosexual Evaluation with Charles P. Samenow, MD, MPH, between February 26, 2025 and May 6, 2025. The full evaluation report is filed separately, under seal. While Dr. Samenow opined that Mr. Mendum meets the criteria for pedophilic disorder and that his offending behavior in the instant offense was motivated by pedophilic interests, he also indicates that his pedophilic interests appear to be only voyeuristic and that there is no evidence that he engaged in any sexual contact with an actual minor or that he has had persistent or pervasive interests in having sex with an actual child. Dr. Samenow does not diagnose Mr. Mendum with any mental health disorders, he focuses on his isolated life and

---

[2] "OSHA 10" refers to the Occupational Safety and Health Administration (OSHA) 10-Hour Outreach Training Program, a basic safety course for entry-level workers that covers common workplace hazards. Participants receive a Department of Labor (DOL) card upon completion, which is often required for construction and other industries. The training helps employees recognize, avoid, and prevent hazards and is available in different industry-specific versions, such as construction or general industry.

behaviors he believed could be consistent with schizoid personality traits.[3] Dr. Samenow further opines that Mr. Mendum poses "an average risk for a future sexual offense" which he believes can be significantly mitigated by the aging process,[4] participation in mental health treatment/sex offender-specific treatment, development of additional protective factors, and long-term probation/supervised release. With treatment and supervision, Dr. Samenow opines that Mr. Mendum's risk is likely to fall to "below average." Importantly, Dr. Samenow states that Mr. Mendum is amenable to treatment and motivated to pursue mental health treatment and sex offender-specific treatment.

Mr. Mendum enjoys woodworking, building lamps, and playing video games. He identifies with the Assembly of God church.

As stated previously, Mr. Mendum has no prior criminal history.

### VI.   Reasons Supporting a 240-month Sentence

A 20-year sentence is sufficient, but not greater than necessary, to effect the purposes of the sentencing statute, 18 U.S.C. § 3553(a)(2), in this case.[5]

---

[3] "Schizoid personality disorder is a condition where a person shows very little, if any, interest and ability to form relationships with other people. It's very hard for the person to express a full range of emotions. … Schizoid personality disorder is less common than other personality disorders, but it's much more common than schizophrenia. The cause is not known. Some symptoms of schizoid personality disorder are similar to autism spectrum disorders, other personality disorders - especially avoidant personality disorder - and early symptoms of schizophrenia. … Talk therapy, also called psychotherapy, can help those who know they need to improve relationships with others. But it's common to feel unsure about change. Medicines are mainly used to treat mental health conditions that occur along with schizoid personality disorder, rather than the disorder itself." https://www.mayoclinic.org/diseases-conditions/schizoid-personality-disorder/symptoms-causes/syc-20354414 (last accessed November 18, 2025).

[4] If sentenced as requested, the 47-year-old Mr. Mendum will serve 17 years with good time earned on a 20-year prison sentence and will be approximately 65 years old upon release from incarceration.

[5] The § 3553(a) factors include: (a) the nature and circumstances of the offense and the history

The stipulated sentencing range makes no reference to the guidelines or any guideline factors. As such, it is the plea agreement and not the sentencing guidelines that control the sentence to be imposed (assuming the court approves the terms of the plea agreement). *Freeman v. United States*, 564 U.S. 522 (2011).

In analyzing a plea agreement subject to Fed. R. Crim. P. 11(c)(1)(C),

> [t]he proper focus is neither the guideline calculations that the judge may perform before deciding whether to accept the agreement[] … nor the "mere fact that the parties … may have considered the Guidelines in the course of their negotiations[.]" … Rather, it is the terms contained within the four corners of the plea agreement that matter.

*United States v. Rivera-Martinez*, 665 F.3d 344, 349 (1st Cir. 2011); *United States v. Cole*, 412 Fed. Appx. 320 (1st Cir. Mar. 17, 2011).

What the Court must determine is whether the stipulated sentence agreed to by the parties is a reasonable sentence. *See, e.g.,* U.S.S.G. § 6b1.2(c) (addressing sentences called for by a Rule 11(c)(1)(C) agreement). The parties in this case concur that the stipulated sentencing range is a reasonable sentencing range and request that the Court impose a sentence within that range.

Mr. Mendum presents as a 47-year old man with no prior criminal history, who has lived at home with his parents for most of his life. He has no wife or children and few, if any, friends. It appears that for many years he sat alone in his room at night, chatting with women in the Philippines via Skype. In some cases, these women exploited their own children, or children

---

and characteristics of the defendant, (b) the kinds of sentences available, (c) the Guidelines range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

under their care, for his pleasure, in exchange for money which Mr. Mendum wired to the Philippines.

There is no indication that Mr. Mendum ever engaged in actual contact with a minor, and it appears that his interests were only voyeuristic.

Sentences upon plea (and even after some trials) in similar cases appear to land largely in the 15-to-25-year range. There are outliers, of course – a 10-year sentence, a 30-year sentence, and much longer sentences as well. What follows here is a list of sentences in similar cases, primarily in the 15-to-25-year range.[6]

> **Raymond Lee CHAVEZ, No. 23-cr-180, ED VA (Alexandria)**
> **Pled guilty:** 18 U.S.C. §§ 2251(a) & (e), 18 U.S.C. § 2252(a)(4)(B) x 2
> **Sentence:** 240 months (20 years) in the BOP, restitution
> **Relevant Facts:** Plea agreement with cap of 25 years; Chavez, 70, was a consultant on issues related to climate change and served international clients, including the United Nations. Between April 2017 and April 2022, Chavez purchased at least 15 livestreaming webcam shows involving the sexual abuse and exploitation of five prepubescent children from child sex traffickers based in the Philippines. Chavez recorded segments of several livestreams with his cell phone and saved the videos to his external hard drives.

- **Franklin Paul ELLER, Jr., No. 16-cr-8207, D AZ (Prescott)**
  **Jury trial:** Guilty x16, 18 U.S.C. §2422(b) & 18 U.S.C. §2, Attempted Coercion and Enticement of a Child x8; 18 U.S.C. §2251(a), 18 U.S.C. §2251(e), 18 U.S.C. §2256, and 18 U.S.C. §2, Attempted Production of Child Pornography x4; 18 U.S.C. §2252(a)(2), 18 U.S.C. §2252(b)(1), & 18 U.S.C. §2256, Attempted Receipt of Child Pornography x4.
  **Sentence:** 180 months (15 years) BOP, lifetime SR
  **Relevant Facts:** In 2014, federal investigators discovered instant messages in which Eller negotiated with adult intermediaries in the Philippines for sexually explicit images and live-cam shows involving minors. Eller was unequivocal in making these requests—he repeatedly insisted that children appear in these videos and images and detailed the sexual acts that they should perform for money.

- **Keith LIWANAG, No. 17-cr-677, ED NY**
  **Pled guilty:** 18 U.S.C. §§ 2251(a) & (e)
  **Sentence:** 180 months (15 years) BOP, 5 years SR

---

[6] It is counsel's understanding is that there have been well over 100 of these cases (i.e. cases involving livestreaming of child exploitation from the Philippines) investigated by Homeland Security Investigations (HSI) over the past 10-15 years.

**Relevant Facts:** While living in New York, Liwanag used a Facebook account to persuade women in the Philippines to engage in sexual acts with children in exchange for money and to produce and send child pornography over Facebook's private messaging service. Liwanag also created videos of live Facebook video chats and Skype video calls he had with women in the Philippines, in which he directed those women to engage in specific sexual acts with male pre-pubescent children. Records obtained from Western Union reflect that from 2015 to 2017, Liwanag made payments to accounts in the Philippines in exchange for images and videos he received.

- **Charles Calahan LOWE, No. 23-cr-20268, ED MI**
  **Pled guilty:** 18 U.S.C. §§ 2251(a) & (e); all other counts dismissed
  **Sentence:** 240 months (20 years) BOP, lifetime SR
  **Relevant Facts:** Charles Calahan Lowe, age 49, exchanged over 1,600 text messages with the known sex trafficker and paid her $30 to $40 for live "shows" of young girls, some as young as three, who were abused in real time to create sexually explicit videos and images shared over Skype. Law enforcement learned of Lowe's existence when they executed a federal search warrant on the trafficker's Skype account and unearthed the detailed text messages. Lowe sent wire payments for the child sexually abusive material over Western Union at Rite Aid stores near his residence to avoid detection by his wife. The trafficker has since been arrested and charged overseas.

- **Tateum Graham PLANT, No. 24-cr-42, D OR**
  **Pled guilty:** 18 U.S.C. §§ 2251(a) & (e)
  **Sentence:** 262 months (21 years, 10 months) BOP, lifetime SR
  **Relevant Facts:** From 2017 to 2023, the defendant used the internet to sexually abuse children. In August 2023, HSI in Portland received a tip that defendant Tateum Plant had been communicating with multiple known sex traffickers in the Philippines via an online platform. HSI obtained a warrant for defendant's online chats, which revealed over 16,000 individual messages with multiple known traffickers in the Philippines who had access to children between April 2017 and August 2023. These chats consist of defendant seeking out individuals in the Philippines who had access to children and arranging live sex shows featuring the trafficker abusing a child according to defendant's instructions. Defendant negotiated with the trafficker for a price depending on the length of the show and the type of sexual abuse the trafficker would inflict on the child.

- **Carsten Igor ROSENOW, No. 17-cr-3430, SD CA**
  **Jury trial:** Guilty x2, convicted of 18 U.S.C. §§ 2251(c), 2252(a)(4)(B)
  **Sentence:** 300 months (25 years) BOP (240 months concurrent), lifetime SR
  **Relevant Facts:** Rosenow was found guilty by a federal jury on August 30, 2019, on charges of production of child pornography and possession of child pornography. Rosenow, a former Chief Marketing Officer for tech company Illumina, Inc., who lived in San Diego, came to the attention of law enforcement when the FBI identified him as someone who regularly traveled abroad, including to the Philippines. The FBI received information that Rosenow was communicating through Facebook with what appeared to be minor females living in the Philippines, using an account under the name "Carlos Senta," and planning to meet to engage in sex while he was traveling there.

- **Carey Lee SACKMANN, No. 21-cr-00355, D MD**
  **Pled guilty:** 18 U.S.C. § 2422(b)
  **Sentence:** 120 months (10 years) BOP, 7 years SR
  **Relevant Facts:** According to his guilty plea, beginning no later than 2015, Sackmann engaged in video chats with facilitators in the Philippines and Madagascar who sexually exploited minor children in exchange for payment. Sackmann paid facilitators to produce sexually explicit videos of minor children and to see livestream videos of minor children performing sexual acts with adults, other children, or alone, and on more than one occasion took screen captures of the livestreams.

- **Paul SIPEER, No. 16-cr-5005, WD MO (Joplin)**
  **Pled guilty:** 18 U.S.C. § 2252(a)(2)
  **Sentence:** 210 months (17½ years) BOP, lifetime SR
  **Relevant Facts:** According to court documents, HSI agents learned that Sipeer was conducting online money transfers between $10 and $20 several times a month during the summer of 2015 to individuals in the Philippines. Money transfers, conducted through Western Union and MoneyGram, are often used to send funds to pay for sexual performances by children in the Philippines. In prior investigations conducted by HSI, small amounts of money, typically between $5 and $100, are often sent to individuals in the Philippines. Often the senders would send additional payments for continued and/or repeat performances. Upon further investigation, agents learned that Sipeer had been making money transfers to various individuals in the Philippines since January 2013, in amounts ranging up to $480.

- **Jason SPEED, No. 24-cr-00093, D MN**
  **Pled guilty:** 18 U.S.C. § 2252A(a)(2) & (b)
  **Sentence:** 292 months (24 years, 4 months) BOP, 15 years SR
  **Relevant Facts:** Between January 2020 through February 2024, Jason Miller Speed, 42, solicited the production of child pornography over the internet. During that time, Speed conducted an online relationship with an adult woman located in the Philippines. In exchange for money from Speed, and under his direction, the woman produced CSAM content featuring minor victims under the age of 12. Speed was aware the victims were minors.

- **Johnny Ray WOLFENBARGER, No. 16-cr-00519-EJD, ND CA (San Jose)**
  **Jury trial:** convicted of 18 U.S.C. §§ 2251(a) & (e), 18 U.S.C. § 2422(b), 18 U.S.C. § 2252(a)(2)
  **Sentence:** 210 months (17½ years) BOP, 15 years SR
  **Relevant Facts:** In 2016, FBI agents were granted a federal search warrant to examine the contents of the email account for child pornography. The email account was determined to belong to Wolfenbarger. Upon executing the warrant, the FBI identified numerous additional images of child pornography that had been sent to Wolfenbarger by other people. The search warrant further revealed evidence that, in 2013, Wolfenbarger solicited and paid individuals in the Philippines to create custom-made child pornography at his direction, which was transmitted to him live via webcam. Among further evidence presented to the jury, records indicated that Wolfenbarger traveled to the Philippines

throughout 2015 and early 2016. Wolfenbarger returned to the United States on August 2, 2016. Upon his arrival at San Francisco International Airport, he was referred for a customs inspection and met with an FBI Special Agent. Wolfenbarger was interviewed, and he admitted requesting and watching sex acts carried out by children between the ages of three and twelve years old during his webcam viewing sessions.

- **Joseph ZOLL, No. 22-cr-146, D ME**
  **Pled guilty:** 18 U.S.C. § 2251(a) & (e), 18 U.S.C. § 2252A
  **Sentence:** 300 months (25 years) BOP (100 months concurrent), 10 years SR
  **Relevant Facts:** Joseph Zoll, 63, of Sanford, used an online chat and webcam application from his home in Maine to direct an individual in the Philippines to live-stream a video of herself sexually abusing a prepubescent child (6-8 years old). Zoll instructed this individual to, among other things, expose the child's genitals to the camera for him to see and discussed with her his desire to sexually abuse the child. In another instance, Zoll sent this same individual a video depicting an adult woman sexually abusing a child who appeared to be approximately six to eight years old. Zoll communicated with this woman for over two years, during which time he repeatedly instructed her to live-stream video depictions of child sexual abuse. Video files found on electronic devices in Zoll's home confirm that he had similar online relationships with multiple other individuals who, in Zoll's direction, would live-stream video depictions of themselves sexually abusing children for Zoll.

The 240-month sentence requested by Mr. Mendum is consistent with the average sentence imposed in these other, similar, cases, around the country. This is a serious offense, and 20 years in federal prison is a serious sentence, representing well over half of this defendant's remaining life span, according to the Social Security Administration's life expectancy calculator, to wit:

11

The following table lists the **average number** of additional years a male born on October 8, 1978, can expect to live when he reaches a specific age.

| At Age | Additional Life Expectancy (in years) | Estimated Total Years |
|---|---|---|
| 47 and 1 month[a] | 35.0 | 82.1 |
| 62 | 22.7 | 84.7 |
| 67[b] | 19.0 | 86.0 |
| 70 | 16.8 | 86.8 |

[a] Your current age.
[b] Your normal (or full) retirement age.

**Note:** The estimates of additional life expectancy:

- do not take into account a wide number of factors such as current health, lifestyle, and family history that could increase or decrease life expectancy.
- are based on
  - the sex and date of birth you entered (your cohort) and
  - information from our cohort life expectancy tables.
    (Some of the information can be found in the 2025 Trustees Report.)

Estimate as of Tuesday November 18, 2025 15:59:29 EST.

[7]

The longer Mr. Mendum is incarcerated, the more likely it is that he will emerge from prison with no family support, and no skills that will allow him to support himself. A 20-year sentence that has him emerging at age 65 will at least permit him 5-10 years in which he can work and support himself.

VII.  Conclusion

David Mendum comes before the Court for sentencing having admitted and accepted

---

[7] *Social Security Administration, Retirement & Survivors Benefits: Life Expectancy Calculator*, https://www.ssa.gov/cgi-bin/longevity.cgi (last accessed November 18, 2025).

responsibility for his misconduct. Mr. Mendum recognizes the egregious nature of his wrongdoing and the severity of the harm that he caused to the children who were subjected to sexual abuse during the livestream sessions that he paid for. He fully recognizes why he is facing a sentence of at least 20 years. He is a 47-year-old man whose childhood was marked by bullying and who has struggled with forming personal relationships since those early years. As harmful as Mr. Mendum's conduct was, he did not record, distribute or otherwise display the livestream sessions in which he participated. He has no history of direct sexual contact or direct communication with minors. He was not part of any online community discussing or trading child pornography or exploitation.

There is no dispute that this is an extremely serious case. Indeed, the offense of conviction requires a lengthy period of incarceration in all cases, a 10-year mandatory minimum. As a result, the issue is not whether to impose a lengthy sentence. Rather, it is whether the minimum sentence available under the Plea Agreement satisfies the purposes of sentencing. Mr. Mendum, through his counsel, respectfully submits that a sentence of 20 years, followed by 5 years of intensive supervision and treatment, satisfies the goals of sentencing in this case. It is a sentence that will keep him incapacitated well into his 60s, followed by intensive court supervision, but that offers him a chance to resume his life outside of prison. For someone who has shown remorse and an understanding of the egregiousness of his wrongdoing, who made it known early in this prosecution that he wished to plead guilty, and who did not compound the harm he caused by recording or distributing the sexual abuse in which he participated, it is respectfully submitted that a 20-year sentence is sufficient. Such a sentence is also warranted when considered in relation to sentences imposed in like cases in recent years.

Beyond the sentence of incarceration imposed, incarceration will be followed by intensive supervision for Mr. Mendum, including treatment, strict computer monitoring and sex-offender registration, which will directly address risk factors present in this case. For all these reasons, and others, it is respectfully submitted that a sentence of 20 years in the Bureau of Prisons is sufficient but not greater than necessary to achieve the goals of sentencing in this case.

### VIII. Lack of Memorandum

No separate memorandum of law is attached as all points and authorities are contained herein.

### IX. Request for Relief

Wherein, defendant David Mendum, through his counsel, respectfully requests that the Court sentence him as requested herein, and for such other relief as may be deemed just.

Respectfully submitted,

DAVID MENDUM,
By and through his counsel,

Date: December 1, 2025

*/s/ Jeffrey S. Levin*
Jeffrey Levin [N.H. Bar No. 12901]
Asst. Federal Public Defender
Federal Defender Office
22 Bridge Street, Box 12
Concord, NH 03301
Tel. (603) 226-7360

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served on December 1, 2025, upon AUSA Anna Krasinski via CM/ECF electronic filing method, and emailed the same day to USPO Sean Buckley at the U.S. Probation & Pretrial Services Office.

*/s/ Jeffrey S. Levin*
Jeffrey Levin